**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

| | |
|---|---|
| WHEATLAND TUBE COMPANY,<br><br>      Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>      Defendant. | Court No. 17-00021 |

**COMPLAINT**

Plaintiff Wheatland Tube Company ("Wheatland"), by and through its undersigned attorneys, makes the following allegations.

**DETERMINATION CONTESTED**

1. This is an appeal from the final determination issued by the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") in the less than fair value ("LTFV") investigation of circular welded carbon-quality steel pipe ("CWP") from the United Arab Emirates ("UAE") that resulted in issuance of an antidumping duty ("AD") order. *Circular Welded Carbon-Quality Steel Pipe From the United Arab Emirates: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 75,030 (Oct. 28, 2016) ("*Final Determination*"); *Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates: Antidumping Duty Order*, 81 Fed. Reg. 91,906 (Dec. 19, 2016) ("*AD Order*").

2. Commerce issued the *Final Determination* on October 21, 2016, notice thereof was published in the Federal Register on October 28, 2016, and the *AD Order* was issued through publication in the Federal Register on December 19, 2016. *Final Determination*, 81 Fed. Reg. 75,030; *AD Order*, 81 Fed. Reg. 91,906. The challenged determinations, findings, and

conclusions are set out primarily in the accompanying "Issues and Decision Memorandum" for the *Final Determination*. *See* U.S. Department of Commerce Issues and Decision Memorandum from C. Marsh to R. Lorentzen, Case No. A-570-932 (Oct. 21, 2016), available at http://enforcement.trade.gov/frn/summary/uae/2016-26107-1.pdf ("ID Memorandum").

## JURISDICTION

3. This action is commenced under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), 1516a(2)(B)(i), and 1516a(d), to contest the *Final Determination* and *AD Order* issued by Commerce.

4. This Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c).

## TIMELINESS OF THE ACTION

5. Commerce issued the *AD Order* on CWP from the UAE on December 19, 2016. *See AD Order*, 81 Fed. Reg. 91,906.

6. This action was commenced by the filing of a Summons on January 18, 2017, within 30 days after the publication of the *AD Order*. This Complaint is being timely filed within 30 days after filing of the Summons. Accordingly, this action is timely commenced pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 2636(c).

## STANDING

7. Wheatland is a U.S. producer of CWP. Consequently, Wheatland is an "interested party" as defined by 19 U.S.C. §§ 1516a(f)(3), 1677(9)(C). Additionally, Wheatland petitioned for – and actively participated in – the LTFV investigation of CWP from the UAE that resulted in issuance of the *AD Order* and the contested *Final Determination* that is the subject of this appeal. Accordingly, Wheatland has standing pursuant to 19 U.S.C. § 1516a(d) as a party to the proceeding in connection with which this Complaint arises.

8. Wheatland is entitled to commence this action pursuant to 28 U.S.C. § 2631(c).

## STATEMENT OF CLAIMS

### COUNT ONE

9. Wheatland incorporates the allegations contained in paragraphs 1 through 8 as fully set forth herein.

10. In the *Final Determination*, Commerce granted a level of trade ("LOT") adjustment to mandatory respondent Universal Tube and Plastic Industries, Ltd.-Jebel Ali Branch ("UTP"), Universal Tube and Pipe Industries, LLC ("DIP"), and KHK Scaffolding and Framework LLC ("KHK") (collectively, "Universal"). *See* ID Memorandum at 24-28. Commerce specifically found that Universal's home market sales through its producers UTP, DIP, and KHK, were at a different LOT than were Universal's home market sales through its affiliated distributor Dayal Steel Suppliers LLC ("DSS"). *See id*. at 20, 24-26.

11. Universal did not raise its request for a LOT adjustment until the very end of the LTFV investigation in its administrative case brief, causing Commerce to "recognize the petitioner's concerns with respect to the circumstances surrounding the timing of Universal's LOT adjustment claim." *Id*. at 27. Going forward, Commerce "will require in subsequent segments that all information relevant to LOT adjustment claims be made available in the respondents' questionnaire response and the intensity and frequency of all selling functions to be fully disclosed at that time as well." *Id*. at 27-28.

12. Commerce improperly allowed Universal to benefit from its belated claim for a LOT adjustment, which prejudiced Wheatland's ability to timely evaluate and respond to the request. Commerce further improperly relied upon self-serving statements from Universal during the verification process – during which no representatives of domestic interested parties were present

– that contradicted record evidence. Moreover, Commerce's grant of the LOT adjustment contradicted applicable administrative and judicial precedent.

13. Universal failed to carry its well-established burden of demonstrating the propriety of a LOT adjustment in the *Final Determination*. Rather, over the course of the LTFV investigation, Universal morphed its request for a constructed export price ("CEP") offset to one for a LOT adjustment. Universal similarly modified its reported sales activities to support its morphed request. Commerce should have been skeptical of Universal's thrice revised selling activities to support its eleventh hour request for a LOT adjustment, which was rejected in the preceding LTFV investigation of CWP from the UAE. Commerce instead rotely accepted Universal's self-serving statements at verification.

14. Commerce's grant of a LOT adjustment to Universal in the *Final Determination* was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.

## COUNT TWO

15. Wheatland incorporates the allegations contained in paragraphs 1 through 14 as fully set forth herein.

16. In the *Final Determination*, Commerce used an alternate credit expense period for one of Universal's U.S. customers. ID Memorandum at 28-29. This alternative to Universal's reporting resulted from Commerce during the CEP verification noting that "Universal's methodology for calculating the credit period for this customer may have significantly overstated the credit period." *Id*. at 28.

17. Commerce abandoned its role as neutral verifier by devising an alternate credit expense to benefit Universal. Indeed, Commerce "found that Universal's methodology for calculating the

credit period for its sales to this customer was acceptable in general." *Id*. The *Final Determination* should have therefore accepted the credit expense period as initially reported by Universal.

18. By undertaking this revision at verification – a process intended to match reported data to source documents, during which no representatives of domestic interested parties were present and, for which there is no opportunity to submit factual information – Commerce denied Wheatland due process and an opportunity to meaningfully challenge Commerce's actions. Commerce short-circuited the administrative process and, in so doing, abused its discretion.

19. Commerce's use of an alternate credit expense period for one of Universal's U.S. customers in the *Final Determination* was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.

## COUNT THREE

20. Wheatland incorporates the allegations contained in paragraphs 1 through 19 as fully set forth herein.

21. In the *Final Determination*, Commerce used revised U.S. packing expenses for Universal. ID Memorandum at 29-30. This alternative to Universal's reporting resulted from Commerce at verification finding that the cost of "caps" were reported as both a packing expense and part of Universal's cost of manufacture ("COM"). *Id*.

22. In instructing Universal to revise U.S. packing expenses, Commerce acted contrary to record evidence and its treatment of caps in the preceding LTFV investigation of CWP from the UAE. Commerce once again abandoned its role of neutral verifier, this time ensuring that Universal benefitted from ambiguity surrounding the nature of "caps." Indeed, Commerce

qualified its finding by explaining that it "will consider the appropriate treatment of caps in a subsequent administrative review." *Id*. at 30.

23.     Commerce's use of a revised U.S. packing expenses for Universal in the *Final Determination* was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.

## REQUEST FOR RELIEF

24.     Wherefore, Wheatland respectfully requests that this Court:

   a. hold and declare that the aspects of Commerce's *Final Determination* described herein are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence on the record, or otherwise not in accordance with law;

   b. remand this case to Commerce for disposition consistent with the decision of this Court; and

   c. provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

\_\_/s/ Roger B. Schagrin\_\_
Roger B. Schagrin
Jordan C. Kahn

**SCHAGRIN ASSOCIATES**
900 7th Street, N.W.
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to Plaintiff*
*Wheatland Tube Company*

Dated: February 16, 2017

# CERTIFICATE OF SERVICE

**Wheatland Tube Company v. United States**
**U.S. Court of International Trade**
**Court No. 17-00021**

I hereby declare that on this 16th day of February, 2017, I have served a copy of the attached Complaint in CIT Case No. 17-00021 by certified U.S. mail, return receipt requested, on the following:

Julie C. Mendoza, Esq.
**Morris, Manning & Martin, LLP**
1401 Eye Street, NW
Suite 600
Washington, DC 20005

Matthew T. McGrath, Esq.
**Barnes, Richardson & Colburn, LLP**
1200 New Hampshire Ave., NW
Suite 725-B
Washington, DC 20036

/s/ Roger B. Schagrin
Roger B. Schagrin
Schagrin Associates
900 7th St. NW Suite 500
Washington, DC 20001
(202) 223-1700